We will no rush at all but we'll call the second and last case for the day. And that is Marbury v. United National Insurance Company 2430599. Counsel for Ms. Marbury, whenever you're ready. Good afternoon, Your Honors, and may it please the Court. My name is Mark Montiel and I represent Ms. Annie Marbury, the appellant in this matter. The District Court's ruling on the motion for summary judgment should be reversed and the matter remanded for further proceedings. The Court erred when it found that the appellant did not have an insurable interest in the property based on a 2019 correspondence inappropriately presented in the appellee's reply brief and dated over a year prior to Hurricane Laura and before the policy of insurance in this matter was even issued. The facts of this case are fairly straightforward for the Court. Ms. Marbury was the president of the church and registered agent. The church owned a property at 2201 23rd Street in Lake Charles, Louisiana that was damaged significantly by Hurricane Laura. Ms. Marbury insured that property and this dispute arises out of whether or not Ms. Marbury had an insurable interest in the church's property. The appellant is asking this honorable Court to find that she did in fact have an insurable interest and to allow her to proceed with her insurance claim and rebuild the insured property. Before continuing, I'd like to provide a brief overview for the Court of the argument I intend to present for you today. First, Annie Marbury had an insurable interest in the property. Secondly, the district court wrongly relied on evidence submitted in a reply brief in its decision. And third, even when the letter is considered, it has no bearing on whether Marbury had an insurable interest in the property at the time the property was issued or at the time of the loss. When we turn to whether Ms. Marbury had an insurable interest in the property, the relevant definition is found in Louisiana Revised Statute 22-853 where it defines an insurable interest as a lawful and substantial economic interest in the safety or preservation of the subject of insurance. The public policy that underlies this concept is to prevent wagering in insurance contracts. And so when we look at Adam Miguez Funeral Home Inc. and then later the adopted Supreme Court case of DeGiromo v. Liberty Mutual Insurance, the question that underlies the public policy is whether or not allowing this particular person to place insurance on this particular property or thing would be wagering in insurance risk. Well, so let's just go to the evidence. I mean, in the 2019 letter that Ms. Marbury sent to GuideOne, she said the church organization pays the mortgage. What evidence does plaintiff or appellate here offer that she personally paid the mortgage or had any other substantial investment in or stake in the property? Two things. One, Your Honor, I don't think it's required that she pay the mortgage to have an interest, but to the extent that we should have conducted additional discovery on that. We have that letter, and then we have deposition testimony that stands to the opposite that the court acknowledges and essentially discards by stating, well, that's self-serving testimony. I'm going to discard it, unfortunately. Well, it is self-serving. That's one issue with what the district court said, I guess, but still, it was incumbent upon her to prove an insurable interest at any trial of this, correct? I mean, that's the foundation for her claim to be able to go forward, is it not? I would agree, Your Honor. She certainly needs to demonstrate an insurable interest. So what evidence is there that she personally paid the mortgage? I don't believe there is specific evidence of that, Your Honor. Okay. That she specifically paid the mortgage, aside from her deposition testimony that I referenced. Well, her deposition testimony is not exactly clear, especially when juxtaposed with the letter in 2019 that stated she didn't personally pay the mortgage. Well, Your Honor, I think it bears mentioning that the lack of clarification is something that probably leads to a disputed issue of materiality. No, I don't know that the plaintiff can create her own disputed issue of fact. I mean, this was easily remittable by giving an affidavit saying, no, I paid it out of my funds. Wouldn't that have given her the insurable interest? Well, one of the issues, Your Honor, is that this was submitted in a reply brief, and so we were not afforded the opportunity to do that. You didn't try to do a surreply? We didn't try to do a surreply because we were in a situation where we felt like the court would order us to do one if it felt that we should, and that's what the Mid-Circuit case law suggests. Did you ever try to do it any other time? Did we ever try to do it? Did you file for a motion to reconsider the summary judgment order? We did not, Your Honor. We sought immediate review from this court instead. So if she did not pay the mortgage out of personal funds, what is the evidence to support an insurable interest? Sure. I think there's a few things, Your Honor. The first is she testified that she provided the furnishings for the home, so certainly the furniture in the home is one example of something that could be considered an insurable interest. Second, there's a number of interesting cases, and they start pre-Civil War, but fortunately there are some adaptations after that. Bell v. Western Marine Fire Insurance, Bell v. Fireman's Insurance Company of New Orleans, Paid v. Western Marine and Fire Insurance Company, all cases that we didn't cite that stand to the proposition that a registered agent or an agent would have an insurable interest in the property of the principal. Here it's undisputed that she was both the registered agent via the Secretary of State's website and the president of the church who would be tasked with placing insurance for this risk. And so— But she was the applicant for insurance. I mean, she could easily have gotten an insurance policy in the name of the church as the agent of the church. But that's not what happened. As she had in the past, Your Honor, it's our understanding that the broker had encouraged her to do it this way based on the way the property was being handled at that time. Where is that in the record? It's not in the record, again, Your Honor, because we weren't afforded an opportunity to respond to the reply of the letter that was submitted. Yes, but this was summary judgment. You certainly had a chance to develop the record and discovery. I actually disagree with that, Your Honor, insofar as that we had two pending motions to compel that had been granted on witnesses that we were looking to depose in this case, and this summary judgment was sort of midstream. We were never actually afforded the opportunity to depose anyone in this case. We were starting with some corporate representatives and things that were more central to our case, but I think certainly the deposition of Ms. Marbury had been taken, but I think an affidavit would have been appropriate. And then additionally, speaking to her daughter, Ms. Mahogany, who was allegedly living in the property at the time to determine, you know, the rights of use and different things. The other thing, I think the Stokes case stands to the proposition that a right of use is sufficient to confer an insurable interest, and so in that case, a niece is given the right to use a property, and the court found that that conferred an insurable interest. But yeah, because she was there rent-free. In other words, if she was denied the property or the use of the property at that point, she would have to go out and pay the rent, which means she was going to suffer a loss. And similarly in this case, Your Honor, Ms. Marbury testified that she used the property when she visited the church in Lake Charles. But that was all way before this policy, wasn't it? I don't think it was, Your Honor. I thought she testified that she didn't really use it anymore in that fashion when her daughter was living there. She may not have in that immediate moment, and again, that's something that probably needed to be developed more and understood with Ms. Mahogany, but the reality is she still had a right to use it. It's my understanding, again, and this is not necessarily well-born in the record, and I think underlying the principle of why we probably should have done more discovery before this motion was granted, I think there's certainly a dispute as to that. I think the registered agent scenario is another. And then I think it's also important to understand that when we're talking about the public policy and whether or not you'd be wagering a risk, Ms. Marbury did receive some insurance proceeds from the policy that she used to fix the house, including getting a new roof and gutting the  I say that's relevant because her subjective belief is that she wouldn't be better off taking the money and running, essentially, which is the underlying public policy consideration for whether or not someone has an insurable interest. And so, certainly, she believed that she had an interest in the property and an interest that was substantial enough to sink $40-some-odd thousand dollars of what she received into fixing it up and not simply, you know, pocketing the money. And so— If she didn't have an insurable interest from the start, would the insurer be entitled to try to claw back the payments it made at the beginning? I think it could, Your Honor, and I think that's something that they've argued that if you assume she doesn't have an insurable interest, they could try to claw payments back from Ms. Marbury. There's really two relevant timeframes for when you must have an insurable interest. One is at the time the policy is bound, and two is at the time of the loss, which, again, the letter that was submitted was one and a half years prior to the loss and nine months approximately prior to the policy— All right, but what—where's the evidence from the plaintiff that the situation had changed between the 2019 letter to Guide 1 and the time she took out the policy with United? Again, when the trial court abused its discretion, Your Honor, by not allowing or ordering a serve reply or striking that evidence, I don't think we had an opportunity to respond. All right, wait a minute. That's procedural. I'm asking where the evidence is that the situation had changed from her representation in 2019 before she took out the policy in 2020 or whenever that was. There is no evidence in the record of that, Your Honor. So the only evidence we've got at the time she took out the policy was this representation in 2019 that the church paid the mortgage, and it was a property that her—I can't remember if it said that Denise lived there at the time or not or what have you. But either way, the court based its finding there was no insurable interest on that letter. And I think that was a mistake, Your Honor, because the letter is neither within the policy period nor at the time of the storm. Do you dispute the facts in the letter? I don't have the sufficient information to do that within the record, Your Honor. If I would be allowed to— Can the plaintiff hide the ball and just not introduce evidence in the record and then avoid summary judgment as a result? I don't think that's what we were intending to do in this case, Your Honor. I'm not saying you're intending to do it, of course, but I'm saying you can't very well come in here and say, well, I have no idea whether that is true or not true or anything in that letter. But— I do know the answer to that question, Your Honor, and I'd be happy to get into it if the court will indulge it. It's my understanding that Ms. Mahogany was no longer working for the court. She was driving 18-wheelers instead, and so they shifted the way the property was insured because, you know, that was more of a rental use to the daughter than the original use of her as the church pastor. That's my understanding, and that's what I believe the evidence would bear out if it was ever allowed. Did the district court find that she made a misrepresentation? It did not, Your Honor. It found that she did not make a misrepresentation because if you look at the— So, did the district court say that the letter somehow contradicted and rendered null and void her 61 pages of deposition testimony? Or did the district court instead rule it wasn't going to consider that because it's quote self-serving? Which did the district court rule? I believe it was a relatively short kind of cursory statement, but I believe the district court found that it was self-serving testimony and therefore wouldn't consider it. It didn't say the letter contradicted it. The district court just said sworn testimony is self-serving. I agree, Your Honor, and our position is the letter does, you know, is in opposite of that testimony and therefore creates a genuine issue of material fact at the very least. You mentioned the furnishings. Does that have anything to do with the letter? It doesn't. It's not mentioned in the letter at all, Your Honor. Would furnishings be—would furniture—is furniture an insurable interest under Louisiana law? I think it is to the extent that there's a—there are certain aspects of each policy that include the contents of the dwelling, and so I think—and I've had other cases where there's questions about who owns certain property within houses and whether or not it's insured and what certain LLCs— I was looking at the record, you know, the amount of the record that exists, having ruled at summary judgment. It looked like she and her husband, they give services, they give services on Friday night and Saturday morning, therefore, they need to spend the night Friday night. That's accurate. That's what she alleged. That's accurate, Your Honor, and I think her husband had passed away, and so I think, you know, the frequency of her trips and things were different. She's also an older lady, you know, she's 73 years old, and so— None of the briefs in the district court. This isn't strong criticism, but this is an important issue of Louisiana law, what's an insurable interest. Do you want to give us, since I didn't see too much development in the briefs, sort of the basic points. Can there be multiple insurable interests in the same property? There absolutely can, Your Honor. I think it's important to note two things. One, the most standard insurable interest is ownership. That's the simplest one, but it's absolutely not required under Louisiana law. The court in Giddens, State Farm Mutual Auto v. Prince, Young v. State Farm, all find that you need not have ownership to have an insurable interest. There's also case law where they found multiple insurable interests. It's certainly possible in scenarios in which, for instance, that Stokes case that we talked about, the niece they found had an insurable interest, but I'm sure they would have also found that the actual owner of the property had an insurable interest if that person had also had a policy. I think in most logical senses, it's rare that two people would have policies on a property at the same time when one's on a rental policy, because they, in their own minds, understand who controls the thing and who should be insuring it, and in this case, I think Ms. Marbury was correct that it was her responsibility to insure the property. She did so in her own name, and as the Church's agent, I think that's appropriate. Rube v. Pacific Insurance Company of New York is the more modern adaptation. Those cases that I cited to you from the 1800s were all about shipping up and down the Mississippi and whether goods that are owned by someone are insured by a principal. The Rube case is from 1961, so not super well-developed area of case law, but it does reference the fact that an agent, it walks through the analysis and says, well, is this person an agent or not, and the court finds in that case they were not an agent. Here I think it's undisputed that Ms. Marbury is an agent, and the Rube case suggests that had that person been found to be an agent, they would have been found to have an insurable interest. I do not think that there's a lot of Louisiana law on this issue. There are not a lot of cited cases, not a lot of recent cited cases, and I think the reality is because these things usually probably just get worked out, frankly. I think that it's a hyper-technical reading of this scenario to find that this building should not be repaired by the duly paid premiums of Ms. Marbury simply because later you find that she's just an agent of the church, and the church doesn't own it, and therefore she doesn't have an insurable interest. In our estimation, there's a certain amount of equity that a court must consider on whether or not this is a fair or just outcome. I think there's plenty of case law to support that Louisiana courts have broadly interpreted insurable interest. They could have, in many instances, narrowed that and said it's got to be an owner, it's got to be contractual. It's not. It's very broadly interpreted and said, hey, if you could really articulate any substantial interest, whether that be financial or not, or indirectly financial, we're going to consider that an insurable interest. I think Ms. Marbury certainly had those interests in this case in a number of ways. And then moving on briefly to the reply, the case law is pretty clear from this circuit in both residents of Gordon Plaza versus Cantrell and Georgia Firefighters Pension Fund versus Andarco Petroleum, this court has said it's abuse of discretion to allow a new argument and a reply, but even more specifically, to allow new evidence and a reply. The Andarco case specifically stands to the proposition that a sort of expanded expert opinion would be excluded or should be excluded. When we were making the determination as lawyers as to whether or not to try to strike it or those things, we realized, we did this research, and we came to the conclusion that, well, the judge is either going to rule that we need to reply, or if he doesn't, that means he's going to not consider it, which is certainly better for our client. And so the fact that neither of those things happened, not only was it considered, but it really becomes the crux of the decision. I mean, when you read the decision, the decision is, this letter is the reason that your client doesn't have an insurable interest. Thank you, counsel. Thank you. Do we have time for rebuttal? Mr. Is it Mobley? Mobley.  May it please the Court, Larry Edwards, Mobley, on behalf of United National Insurance Company. I want to address briefly, well, does the Court have any questions that they would like to make? Are you defending the district court's state dismissal of the sixty-one page deposition as self-serving? Are you defending that portion of the district court's ruling, that the deposition can be disregarded because it's self-serving? Yes, Your Honor. I would disagree. What's your authority, what's your authority that a deposition under oath can be disregarded because it's self-serving? I don't know that it could be completely disregarded, but as to the ownership interest, whenever it's countervailed against tax assessment records by the Parish of Calcasieu, with the part about whether she pays the mortgage, now she very well may pay the mortgage as an agent for the church. She very well could do that. But she says she paid it. She says she pays it. Now, does, if I write a check on behalf of the law firm that I work for . . . But that's not what she says. She says she paid it. She and her husband paid it. That's not what she says in the letter, and it's not what . . . It's not what she says in the letter, but it's what she says in the deposition. But the assessor's record says that the church owns it, and that mortgage is in the church. Absolutely, but if you want to go pay my mortgage, I bet the bank will take the check. It doesn't change the ownership or my obligation or anything like that. More realistic example, what if my mother wants to pay my mortgage for me? The bank is not going to come after me or her, surely. So she says she paid it, and the question she's not asked ever by anybody in the deposition . . . and last I checked, there were lawyers there, probably very capable ones. She was never asked, did you pay it out of your personal funds? Or did you pay it out of church funds? And I would agree with you. That question should have been asked, Your Honor. Well, it wasn't asked, but the court, the district court says, well, you know, she may have physically paid the mortgage, but she never came in with bank statements or other records showing that she paid them out of a personal check. Where's that required in summary judgment? I'm sorry, Your Honor. Where's that required in the summary judgment rule that she's got to basically validate her deposition testimony with documentation? It's required to the extent she's got to prove that an insurable interest exists in her payment of the mortgage. But she says she paid it. Isn't that proof enough? I don't think it is whenever it's countervailed with the documents that were introduced on the summary judgment. I mean, so I guess . . . Did you find it divisible, or is it resolvable factually? In other words, without cross-examination, the letter predates it by a year or so, both the policy and the larks. February of 2019. So it sort of is the issue of who has the burden to bring up the contradictory evidence? Yes, Your Honor. I think . . . so, the letter is sent February of 2019. The policy application . . . I'm sorry. February or March? I thought the letter was sent in . . . I could be mistaken then. It could be March. But then the policy is taken out November of 2019. The assessor's records do not evidence any transfer. The bank records that we have, which are very limited, don't evidence the mortgage interest being changed. But, to go back to Judge Wilson's question about if his mother paid his mortgage for him as a benefit to him, does that create an insurable interest? Is still your home . . . Well, certainly she could make the argument that she invested substantial resources, et cetera, and Louisiana law allows that to amount to an insurable interest. And that was not argued in the lower court? I mean, I agree with you that this is an important issue for Louisiana law. There's no doubt about that. It's . . . No, it was totally argued before the district court. I mean, they raised in their response to summary judgment, she's invested quote substantial time and money in the subject property. She's paid the note. She's still paying the note. She pays the monthly premium and she testified that they furnished the property. And was evident . . . I don't recall any evidence being introduced into the record. And this goes back to your Honor's . . . also Judge Wilson's question. Whenever my counterpart was up here, Juan was . . . they could attach anything they wanted to, to their opposition. The letter that we're debating about, it bears plaintiff's signature. It's not anything that . . . In that reply in opposition to summary judgment, when she mentioned she did furniture stuff, they do footnote directly to her deposition testimony corroborating that under oath. Now, it's self-serving, but it would seem to create a fact issue or not. I don't think it creates a fact issue, maybe as to potentially the furnishings. But as to the actual home, I don't think it would. I mean . . . But is furnishing a home sufficient to give an insurable interest in the home? If that representation is made to the insurer at the time of writing the policy, probably. But it wouldn't be to the home, I wouldn't think. I think it's so . . . right now, I just sold my home. I'm renting a home. I have a renter's policy. It doesn't cover the structure. It covers the furnishings inside my home. That's it. It covers my personal property. But a policy that covers the structure generally will cover the contents also. So she got both in this instance? It would appear that she did get both in this instance. But wouldn't that be an insurable interest as to both? I do not believe it would, Your Honor. I think that there's an insurable interest in what she owned that could have been at the home, and then there's ownership in the church that owns the property that, as she states in her letter, the church is paying the mortgage for, but then she owns the church. Now, what Plaintiff really argues is kind of a reverse corporate bell-piercing theory. I have an interest in the church. The church owns the property. Therefore, I have an interest in the property. The problem is, is that it goes back to the assessor's records that no property tax has ever been paid on this property, and I'm sure as this court is very well aware, an individual cannot be a 503C corporation. I hate bringing up the IRS code as much as possible, but it can't circumvent the framework within which the church exists to avoid taxes and also give an individual a tax benefit, and that's really what all this goes down to. Also as far as the documents, as you all obviously can see, Plaintiff signed the record. This case was governed like every other hurricane case that I'm sure this court has heard before by a case management order. They said record document 40 and 41, Plaintiff was required to produce ownership records. What didn't they produce? Ownership records. It's also required on page 41 of the record that Plaintiff provide all lost claim history for the property. Well, back to ownership records, I don't know that Plaintiff is really disputing that the But that's neither here nor there if the plaintiff herself had an insurable interest of some other kind in the property. I would agree with you if she could demonstrate an insurable interest. Well, she says she paid the mortgage on the property, so wouldn't that give her a financial interest that rises to an insurable one? If she was personally paying that, which was not adduced, yes. If she was personally paying it, the problem is, as I see it, is the plaintiff never adduced that. They could have done an affidavit, could have done a statement under penalty of perjury and said, I personally pay this mortgage out of my own funds. That is never . . . But we're supposed to parse her deposition testimony where she says she paid it multiple times. We're supposed to parse and say, well, you didn't say it the way we needed you to say it. Or you didn't say the magic words, I paid it out of my personal funds. I don't go around saying that. When I pay the electric bill, I don't tell people, I don't tell anybody really I pay the electric bill. But if I did, I would say, I paid the electric bill out of my personal funds. People don't say that. They don't say that, Your Honor, you're correct. She said she paid it, and she said her husband, Mr. Elbert, paid it. They paid it together all those years. All those years. I did not see a single canceled check or anything in the record. But where's the case that says after a plaintiff testifies to that effect, they've got to produce all the documentation they have to support what they testified to? I think it's incumbent upon them once they have contradictory evidence in the record that circumvents the testimony under oath. To her, I think, honestly, as my counterpart mentioned, this is an elderly lady, and I think she equates, the church was founded by her and her husband at some point. The church, the church board in 2009 authorized her and her husband to take out a mortgage in the church's name. She acted as agent in acquiring the mortgage for the property. 2009, she gets the property. It is in the Calcasieu Parish Assessor's Office as the Church of Jesus Christ House of Prayer. No transfers from then on. Merchants Bank has the mortgage in the church's name. Farmers and Merchants Bank, I apologize. Nothing has changed from ... Well, there might have been a transfer of the bank or the lender, but nothing changes until a fire loss in 2019. At that time, the church holds the policy for the property. There's a fire loss. That goes to the letter that we've all been discussing, and by November of 2019, the policy switches from the church to Ms. Mulberry, plaintiff in this case. Did the agent under Louisiana law have an insurable interest in the property as agent? I don't know, Your Honor. I don't think so. I can't cite a case on that specific point, but a registered agent ... I'm a registered agent for a couple of companies. That doesn't give me an insurable interest in that entity's property. I accept service on behalf of them. I can do multiple things on their behalf, but it doesn't create an insurable interest on my behalf as to the property that is owned by another entity. Frankly, I've given ... It's also a 503C company. I've actually gifted stuff to them, and I guess it would be furnishings. I don't have an insurable interest in it because the title passed for that property to the  Now, whether she gifted the furnishings in this home to the church is not clear. It's not clear that the title transferred or she was actually still the owner of that, and it was not developed as to who purchased those furnishings. When I'm looking at the sort of four relevant pages around ... Yes, Your Honor. I don't dismiss it because it's, quote, self-serving. Your answer is, to her repeated statements, I paid the bill, is that she was under a misunderstanding based on the questions or that she's being deceptive because the letter contradicts it. I think I'm going to give her the benefit of the doubt and say she was under a misconception. You would be able ... That will be verified easily once the checks are traced, correct? Yes, Your Honor. It would have been, and those could have been. It's plaintiff's burden to prove it, and I understand the contradiction with her deposition and all the documents, all the documentary evidence that is not under a misunderstanding or self-serving demonstrates that the church has the insurable interest in the property. I have not found a single document. But there can be multiple interests in the property, right? Yes. There can be multiple interests in the property. Say Ms. ... If she puts the furniture in, she pays some of the mortgage notes, she would have an insurable interest. If she's paying them at the time the policy is perfected or at the time of the policy. Or at the time of the laws. Correct. So the argument reduces to not so much self-serving, but that this letter a year before defeats the possibility altogether. Or that, that's correct, and that she had the burden to clarify that? Yes, Your Honor. And that ... What's the best, just what's the best authority for that? The best authority in the record ... No, legally. Legally? That she can testify under oath that she furnished it and she paid the mortgages, but the district court can disregard that because there is competing evidence. The district court says defeats it. What's the best authority? I'm sorry, Your Honor. I couldn't, I can't ... But that's, am I, isn't that the essence of what you're saying legally is true here? I think that's part of the essence of what I'm saying, yes. I think what I'm saying is, is that every contemporaneous document that goes through this file supports the proposition that the church owns the property and pays the mortgage on the property, and that whenever that is coupled with, as the district court found, basically self-serving testimony, that she is writing the checks on behalf of the church in a, as my counterpart said, is the registered agent to pay the mortgage on the church's behalf, but not from her personal funds. Out of the church's account, not hers. Correct. But it was, I'm sorry, Your Honor. No, no, I understand. Yeah. If that's true, in other words, mortgage payments were solely out of the bank, the church's account, and we put the furnishings to one side, why wouldn't the insurer then be able to claw back $40,000, $50,000? We would, Your Honor. You would. I would have been able to. I mean, obviously now with the finding in the district court, my client decided not to pursue it because it's expensive to litigate. I mean, it's a business decision, but we discussed it and $40,000, $50,000, I mean, that's . . . Could you just quickly describe what the alleged misrepresentations were and what the district court ruled on it? Those didn't pertain to the letter. What were the alleged misrep . . . or did they? The district court said she didn't make a misrepresentation. What's your understanding of that? My understanding is that she said it was a rental property in the application. She never affirmatively states she owns the property. She says it's a rental. So to prove back and to claw back the funds, I would need to prove that it was . . . she somehow affirmatively testified or stated or in some documentation that it was her rental property and instead of the church's rental property. The way I viewed it from the letter is that the church sort of rents it to people that are affiliated with the church. Hence her, as the letter states, her daughter is serving as a youth pastor. So . . . and that is part of her compensation package. So I don't know whether Ms. Mulberry at the time was referring to, hey, the church is renting this or some other interpretation. But I would have had to flesh that out further to claw that back. But now that there was a final . . . or not a final judgment, but now there's a judgment, obviously that is an issue in claim preclusion situation. Does the panel have any more questions? No. Thank you very much. That was very helpful. Council, you have rebuttal time. Very briefly, Your Honor. I was going to clarify the timeline for you just to make it simple. It's a March 15, 2019 letter. The hurricane lure of the date is August 27, 2020. The policy was issued and began on November 5, 2019. I know you all are trying to . . . Would you agree, though, it is possible to read those four or five pages in the deposition? That she's a 72-year-old woman who founded it, her daughter's the youth pastor. She's sort of seeing herself symbiotic. But if the money is coming out of the church's account, she wouldn't have an . . . you can disagree, but that's open to being consistent with her statements. We paid it. We paid it. She may physically have paid it, but does she ever say it came out of my account? Sure. I don't think that's clear at all, Your Honor, in that deposition testimony. I think the panel is spot on when it says there's a lot of holes in this. And the reality is those holes really necessitate additional discovery when the court decided to rule on this summary judgment. Well, it at least necessitated the plaintiffs coming in at summary judgment with evidence to substantiate the insurable interest. And United surely, as I read their motion for summary judgment, our briefing on it, put it at issue. I mean, United says she had no economic interest in the home. But you would have rejected, right? And I think we do, Your Honor, in a few different ways. I think even here today, there's no refutation that she is the agent of the church, and we've cited four cases for the court that say agency relationship is sufficient. The furnishings, again, I don't think you can have . . . you either have an insurable interest in a property or you don't. And so if the furnishing means that you have an insurable interest, you have it. You don't have a partial insurable interest. It's a yes or no proposition. I don't know Louisiana law like you do, but if I have a renter's policy in Mississippi, I have coverage over my contents based on the rental policy, but I don't have an insurable interest in the apartment I'm staying in because I've got furnishings in there. I would agree, Your Honor. That's limited within the context of that specific policy. When you take out the rental policy, you're not asking for dwelling coverage. But I don't know that I could go take out a policy on the apartment building itself either. You probably couldn't, absent some factual scenario in which you were the agent or you were contributing substantially to that apartment complex's economic success and upkeep, etc. Again, I think the public policy consideration is something that the court really shouldn't ignore. You keep going back to public policy. My questions have been much more basic, at least I hope they have been, and that is, just per Judge Higginson's point just now, you've got access to, Plaintiff has access to her own checkbook. And yet on summary judgment in response, she cites her deposition testimony and basically says, well, I have an insurable interest. There's any number of ways. But she never substantiates an economic interest in the property. I would agree, Your Honor, and I think that's largely due to the fact that the letter was submitted in the reply. Had we been ordered or given an opportunity to respond or that discarded, we wouldn't be here today. It would either, if it hadn't been considered, the judgment would have been different. But the letter's from her. It was signed by her. It could hardly be a surprise that they dropped it in at summary judgment as supportive. I'm not suggesting that it was a surprise, Your Honor. What I'm suggesting is that we would have developed an affidavit to respond. And put the letter aside. Where's the evidence that between March of 2019 and November of 2019, six months, where's the evidence that her representation in that letter, the church pays the mortgage, that there was a change, that she was paying the mortgage? I don't think there is evidence of that directly, Your Honor. But I do think that the furnishings are there. But she furnished everything before this policy was ever taken out? I'm not sure. Oh, I apologize, Your Honor. I'm not sure of the exact dates of when furnishings may have come and gone in the house. I thought what she was saying in her deposition, though, is that they set it up and got the house back in 2009 or whatever it was. She and her husband did that and set it up at that point. And again, I don't think it's particularly well developed as to any updates over that time. But again, I think the court can rely on the agency. And I think it bears mentioning that, you know, the public policy here is against wagering risks. I think there's no dispute that that's not what was occurring in this case. And so we would ask that the court reverse and remand this for additional discovery. Thank you, Your Honors. Thank you so much. That concludes the cases for the day. We appreciate counsel coming. Thank you. Thank you.